UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
SOUTHERN DIVISION

CASE NO. _____

JOHN DOE #1,

JANE DOE,

And

JOHN DOE #2,

  Plaintiffs-Petitioners,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY
3801 Nebraska Avenue NW,
Washington, DC 20016

UNITED STATES CITIZENSHIP AND IMMIGRATION
SERVICES
20 Massachusetts Ave NW,
Washington, DC 20008

U.S. DEPARTMENT OF STATE
2201 C Street NW,
Washington, DC 20037

CHAD WOLF, in his official capacity as
Acting Secretary of Homeland Security
3801 Nebraska Avenue NW,
Washington, DC 20016

KEN CUCCINELLI, in his official capacity as
Acting Director of United States Citizenship
and Immigration Services
20 Massachusetts Ave NW,
Washington, DC 20008

KAREN FITZGERALD, in her official capacity as
District Director of United States Citizenship
and Immigration Services,
7200 Bangkok Pl
Washington, DC 20521-7200

MIKE POMPEO, in his official capacity as
Secretary of State
2201 C Street NW,
Washington, DC 20037

And

JOHN DOES #1-5, in their official capacities as
the consular officials responsible for issuing
immigration visas in Kyrgyzstan,

     Defendants-Respondents.
_____/

### PETITION FOR WRIT OF MANDAMUS AND
### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs-Petitioners ("Plaintiffs"), appearing individually under pseudonyms, respectfully bring this Petition for Writ of Mandamus and Complaint for Declaratory and Injunctive Relief to compel Defendants-Respondents ("Defendants") to issue Plaintiffs' visas and to otherwise process their visa cases. In support thereof, Plaintiffs allege as follows:

### NATURE OF ACTION

1. Plaintiff John Doe #1 is a United States citizen who has lived in the United States since July 1993 and has been a citizen since September 2009. He married Plaintiff Jane Doe on December 27, 2017 in Bishkek, Kyrgyzstan. On January 30, 2018, he filed an I-130 Petition for Alien Relative on behalf of his wife, Plaintiff Jane Doe, and her son, Plaintiff John Doe # 2 — both of whom are residents of Kyrgyzstan (collectively, the "Plaintiff Family"). The petition was approved almost one year later on January 28, 2019.

2. In the two years since they filed the petition, Plaintiffs have diligently pursued the lengthy and rigorous immigrant visa application process, which entails, *inter alia*, filing immigrant visa applications, paying over a thousand dollars in filing and processing fees and related costs, and undergoing security screenings, visa interviews, and medical examinations.

3. In June 2019, the Plaintiff Family was interviewed by the Consular Section of the U.S. Embassy in Bishkek, Kyrgyzstan ("Consulate"). At the end of the interview, the Consulate informed the Plaintiff Family that their application had been approved and instructed the Plaintiff Family to leave their passports at the Embassy in Kyrgyzstan so that the passports could be stamped with the visas. The Consulate further informed the Plaintiff Family that their visas could be picked up from the Embassy on June 13, 2019. In reliance on Defendants' representations, Plaintiff John Doe # 1 purchased a one-way plane ticket to Miami, Florida for Plaintiff Jane Doe and Plaintiff Jane Doe provided her two weeks' notice to her employer. Plaintiff Jane Doe was able to withdraw her notification to her employer, but her growth prospects in her career have suffered.

4. Plaintiff Jane Doe went to the Embassy to pick up their passports with visas on June 13, 2019, but was informed that the visas were not ready and that she would need to return the following week on June 20, 2019 in order to pick up their passports with visas. On June 18, 2019, the Consulate called Plaintiff Jane Doe and advised that the Consulate was withdrawing the original approval and that they needed further documentation evidencing their marriage.

5. On June 20, 2019, Plaintiff Jane Doe provided the Consulate with additional documentation and evidence of their bona fide marriage in the form of pictures, correspondence and receipts. Plaintiff Jane Doe also uploaded additional documentation to the U.S. Department of State Consular Electronic Application Center website (the "CEAC Website") on August 13, 2019 and on December 14, 2019.

6. According to the Visa Status Check webpage of the CEAC Website, Plaintiffs Jane Doe and John Doe # 2's cases are in "Administrative Processing." The Plaintiffs are trapped in a state of administrative limbo. Despite having completed all of the administrative steps to receive

their visas and having been told that their visas were approved and would be ready for pickup nearly eight months ago, Plaintiffs still have not received their visas or a resolution on their case.

7. Defendants' refusal to make a decision on Plaintiffs' visas applications deprives Plaintiffs of their rights under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, and its implementing regulations, the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555, 706, as well as agency policy. This inaction also has separated Plaintiffs from their loved ones. It has cost the family thousands of dollars and caused disruptions in Plaintiff Jane Doe's career growth. The financial, physical and emotional stresses that Plaintiffs have suffered as a result of Defendants' failure to act have exacted a significant toll on the family and will not be relieved until a decision is made on their case, as required by law.

8. As explained, in June 2019, Defendants had approved Plaintiffs' application and informed the family of the decision to issue their visas, but later withdrew this decision. Plaintiffs relied on Defendants' representation, upending their lives with the expectation that the visas would be issued. Accordingly, Plaintiffs are entitled to a writ of mandamus compelling Defendants to issue their visas and to further process their visa applications.

9. A court may grant mandamus relief if (1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff. *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016); *see also Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Kerry*, 168 F. Supp. 3d 268 (D.D.C. 2016).

10. Here, Plaintiffs clearly meet all three of these criteria. Plaintiffs have fully complied with all of the statutory and regulatory requirements in the visa application process and were told that their applications had been approved. Accordingly, they have a clear right to the

timely processing of their visa applications. Defendants have unreasonably failed to issue Plaintiffs' visas and to process their applications in a timely manner, in dereliction of their non-discretionary duties, and despite providing Plaintiffs assurances to the contrary shortly before they abruptly and arbitrarily changed course. Plaintiffs have no alternative means to obtain relief.

11.  Based on the foregoing, Plaintiffs are also entitled to relief under the APA, which authorizes courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). "Agency action" includes, in relevant part, "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). Defendants' failure to issue the Plaintiff Family's visas and timely process their visa applications constitutes agency action unlawfully withheld or unreasonably delayed, entitling Plaintiffs to relief.

12.  Accordingly, Plaintiffs are entitled to a writ of mandamus and/or order (1) declaring that Defendants' continued failure to issue the Plaintiffs' visas and further process Plaintiffs' visa applications violates the APA, the INA, agency regulations, and agency policy; and (2) directing Defendants to issue Plaintiffs' visas and to further process Plaintiffs' immigration visas forthwith.

13.  The urgency to resolve Plaintiffs' case has become even greater in the recent weeks. On January 31, 2020, President Trump issued Proclamation 9983 entitled Improving Enhanced Vetting Capabilities and Processes for Detecting Attempted Entry (the "Proclamation"), which suspended visa issuance on nationals of six countries, including Kyrgyzstan. The Proclamation is scheduled to take effect on February 21, 2020. Considering that the Plaintiff Family's visas were approved, which approval was later withdrawn, almost eight (8) months ago,

the case needs to be resolved before the Proclamation goes into effect to avoid further unnecessary delay and hardship on the Plaintiffs.

## THE PARTIES

14. Plaintiff John Doe # 1 is a U.S. citizen who resides in Pembroke Pines, Florida. He was born in Russia in 1977, moved to the United States in 1993, and became a U.S. citizen in 2009.

15. Plaintiff Jane Doe is the wife of John Doe # 1. They were married on December 27, 2017 in Bishkek, Kyrgyzstan. She was born in Kyrgyzstan in 1983 and is a Kyrgyzstani national who resides in Kyrgyzstan. As a Kyrgyzstani, her official identification and travel documents are issued by the Kyrgyzstani government.

16. Plaintiff John Doe # 2 is the son of Jane Doe. He was born in Kyrgyzstan in 2006 and is a Kyrgyzstani national who resides in Kyrgyzstan. As a Kyrgyzstani, his official identification and travel documents are issued by the Kyrgyzstani government.

17. Defendant Department of Homeland Security ("DHS") is an agency of the United States Government. DHS is responsible for implementing and enforcing the INA.

18. Defendant Chad Wolf is the Acting Secretary of DHS and is the senior official of DHS. He is sued in his official capacity.

19. Defendant United States Citizenship and Immigration Services ("USCIS") is a component of DHS responsible for, *inter alia*, adjudicating immigrant visa petitions filed on behalf of foreign nationals seeking to immigrate to the United States. USCIS plays an integral role in the immigrant visa application and adjudication process.

20. Defendant Ken Cuccinelli is the Acting Director of USCIS and is the senior official of USCIS. He is sued in his official capacity.

6

21. Defendant Karen FitzGerald is the USCIS District Director for the Asia/Pacific District. She is sued in her official capacity.

22. Defendant U.S. Department of State is an agency of the United States Government. U.S. Department of State has an integral role in the immigrant visa application and adjudication process.

23. Defendant Mike Pompeo is the Secretary of State and is the senior official of the U.S. Department of State. He is sued in his official capacity.

24. Defendants John Does #1-5 are the consular officials employed by the U.S. Department of State who are responsible for issuing U.S. immigration visas in Kyrgyzstan. Their identities are not publicly disclosed by the U.S. Department of State. They are sued in their official capacities.

## JURISDICTION AND VENUE

25. This case arises under the United States Constitution; the INA, 8 U.S.C. § 1101 *et seq.*; and the APA, 5 U.S.C. § 701 *et seq.* This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1361, and 2201–2202.

26. There exists an actual and justiciable controversy between Plaintiffs and Defendants requiring resolution by this Court. Plaintiffs have no adequate remedy at law.

27. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e).

**BACKGROUND**

**I.    Statutory and Regulatory Framework**

28. Immigration based on a foreign national's familial relationship with a United States citizen or lawful permanent resident (LPR) is the primary method by which foreign nationals may seek to immigrate to the United States.

29. Under the INA, family-sponsored visas may be issued to, inter alia, the spouses of U.S. citizens, as immediate relatives. 8 U.S.C. § 1151(b)(2)(A)(i). The child of the spouse applicant is permitted to apply for immigrant visas as a derivative beneficiary. Id. § 1153(d).

30. The family-sponsored immigration process is initiated when a citizen or LPR sponsors a qualifying family member by filing a Petition for Alien Relative (Form I-130) with USCIS. 8 U.S.C. § 1154. USCIS then verifies that the petitioner is a United States citizen or LPR and that a qualifying familial relationship exists between the petitioner and the beneficiary. 8 C.F.R. § 204.1(a)(1).

31. A spouse of a United States citizen—along with any derivative beneficiaries—is not subject to numerical limitations on immigrant visas. 8 U.S.C. § 1151(b).

32. If an I-130 petition is approved, USCIS forwards the approved petition to the Department of State, National Visa Center (NVC). The beneficiary is then able to begin the process of formally applying for a visa by submitting a DS-260 Online Immigrant Visa and Alien Registration Application with the NVC.

33. After completing the DS-260 application, filing supporting documentation, completing a medical examination, and paying applicable fees, a beneficiary is interviewed by a consular officer at the beneficiary's applicable U.S. embassy or consulate.

34. During the interview, the applicant executes Form DS-260 by swearing to or affirming its contents and signing it before a consular officer. See 22 C.F.R. § 42.67. The Department of State website instructs that "[i]f your visa is approved, you will be informed how and when your passport and visa will be returned to you." The Immigrant Visa Process, U.S. Department of State, Bureau of Consular Affairs, available at

https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process/step-10-prepare-for-the-interview/step-12-after-the-interview.html (last February 11, 2020).

35. Once "a visa application has been properly completed and executed before a consular officer in accordance with the provisions of the INA and its implementing regulations, the consular officer must issue the visa, refuse the visa under INA 212(a) or 221(g) or other applicable law." 22 C.F.R. § 42.81(a). The Department of State Foreign Affairs Manual (FAM) further explains that "[o]nce an application has been executed, the consular officer must either issue the visa or refuse it. A consular officer cannot temporarily refuse, suspend, or hold the visa for future action. If the consular officer refuses the visa, he or she must inform the applicant of the provisions of law on which the refusal is based, and of any statutory provision under which administrative relief is available." 9 FAM § 504.1-3(g).

36. If the consular officer determines that a visa should be issued, the officer is required to arrange the appropriate visa documentation and sign and seal the immigrant visa, consistent with the requirements set forth in 22 C.F.R. § 42.73.

37. Conversely, if the consular officer determines that the visa should be refused, the officer must have a basis for refusal that is "specifically set out in the law or implementing regulations." 22 C.F.R. § 40.6. The officer also must comply with the refusal procedure outlined in 22 C.F.R. § 42.81(b), which mandates, in relevant part, that the "consular officer shall inform the applicant of the provision of law or implementing regulation on which the refusal is based and of any statutory provision of law or implementing regulation under which administrative relief is available."[1]

---

[1] State Department guidelines provide additional details regarding the manner in which visa applications should be refused, including a requirement that officers notify applicants, orally and in writing, who are refused a visa under INA Sections 212(a) or 221(g).  See 9 FAM § 504.11-

Case 1:20-cv-20649-UU   Document 1   Entered on FLSD Docket 02/13/2020   Page 10 of 20

38. If a consular officer determines that additional information is required from an applicant or that a Security Advisory Opinion—known as "administrative processing"—is necessary to determine an applicant's eligibility, the officer must deny the application under INA § 221(g), pending future consideration once additional information is received or administrative processing is concluded. *See* 9 FAM 504.11-3(B)(2)(a) ("If, after interviewing the applicant, you decide that an advisory opinion is necessary, you must first refuse the alien under INA 221(g).") The FAM categorizes Section 221(g) refusals issued for the purpose of conducting administrative processing as "Quasi-Refusal Cases." 9 FAM 504.11-3(B).

39. When a "quasi-refusal" is issued pursuant to INA § 221(g), the applicant must be notified both orally and through a refusal letter, which is required to "[e]xplicitly state the provision of the law under which the visa was refused." 9 FAM 504.11-3(A)(1).

40. In the event that a visa is refused, the application must be reconsidered if "within one year from the date of refusal [the applicant] adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based." 22 C.F.R. § 42.81(e).

## II. Factual Background

### A. Proclamation 9983

41. On January 31, 2020, President Trump issued Proclamation 9983, "Improving Enhanced Vetting Capabilities and Processes for Detecting Attempted Entry." https://www.whitehouse.gov/presidential-actions/proclamation-improving-enhanced-vetting-capabilities-processes-detecting-attempted-entry/). Section 1(d)(ii) of the Proclamation suspended "the entry into the United States of nationals of Kyrgyzstan as immigrants".

42. The stated effective date of the Proclamation is February 21, 2020. *See id.* § 4.

---

3(A)(1) (setting forth the required contents of 212(a) and 221(g) refusal letters).

10

B.   **Plaintiffs' Visa Applications**

43.   On January 30, 2018, Plaintiff John Doe # 1 filed an I-130 Petition on behalf of his wife, Jane Doe, and her son, John Doe # 2. The Petition was approved almost one year later on January 28, 2019.

44.   In the last year since the petition was approved, Plaintiffs have diligently pursued the lengthy and rigorous immigrant visa process, which entails, *inter alia*, filing immigrant visa applications, paying over a thousand of dollars in filing fees and related costs, and undergoing security screenings and medical examinations.

45.   On June 7, 2019, Jane Doe and her son, John Doe # 2, were interviewed by the Consular Section of the U.S. Embassy in Bishkek, Kyrgyzstan. *See* Ex. 1. After the interview, the Consulate advised that they were approved and asked them to leave their passports so their newly approved visas could be affixed. The Consulate further informed Plaintiff Jane Doe that their passports and visas would be ready for pickup one week later, on June 13, 2019.

46.   On June 13, 2019, Plaintiff Jane Doe went to the Embassy to pick up their passports with visas, but was informed that the visas were not ready and that she would need to return the following week on June 20, 2019 in order to pick up their passports with visas. On June 18, 2019, the Consulate called Plaintiff Jane Doe and advised that they were withdrawing the original approval and that they needed further documentation evidencing their marriage.

47.   On June 20, 2019, Plaintiff Jane Doe hand-delivered additional documentation and evidence of their bona fide marriage to the Consulate. Plaintiff Jane Doe also uploaded additional documentation to the U.S. Department of State Consular Electronic Application Center website (the "CEAC Website") on August 13, 2019 and on December 14, 2019; the status of which is "Submitted", whereas the original documentation that was uploaded in April 2019 with the

11

original application is reflected as "Accepted", which appears to indicate that the documentation that was submitted on this website has not yet been reviewed.

48. On the same day, June 20, 2019, Plaintiff John Doe # 1 emailed the Consulate explaining the recent circumstances and requesting them to review the case as soon as possible and to advise if there was any other information that they needed. This email went unanswered. *See* Ex. 2.

49. On July 9, 2019, Plaintiff John Doe # 1 emailed the Consulate asking whether any additional information was needed and requesting them to review the case as soon as possible. This email went unanswered. *See* Ex. 3.

50. On July 22, 2019, Plaintiff John Doe # 1 emailed the Consulate requesting an update on the status of the family's visas and whether additional information was needed. This email went unanswered. *See* Ex. 4.

51. On August 11, 2019, Plaintiff John Doe # 1 emailed the Consulate a recent timeline of the case and requested an update on the status of the family's visas and whether additional information was needed. He specifically asked for the Consulate to send a response because the last three emails that he sent went unanswered. On August 13, 2019, the Consulate responded to this email and stated that his "wife's case is still under administrative processing" and that they would "contact her as soon as" they had a response. *See* Ex. 5.

52. Prior to receiving the Consulate's August 13, 2019 one-sentence email response, none of the Plaintiffs had been notified that the Plaintiff Family's cases was undergoing administrative processing. This is despite State Department guidelines requiring such notification in the form of a Section 221(g) refusal letter outlining the "provision of law under which the visa is refused."

53. On September 29, 2019, Plaintiff John Doe # 1 emailed the Consulate advising that he would be visiting Kyrgyzstan in the middle of October 2019 and asked for an appointment to discuss the Plaintiff Family's cases. The Consulate responded the next day that "the case is still undergoing an admin processing and [they] do not make an appointment with the Petitioner for any discussion on immigrant visa cases." *See* Ex. 6.

54. In November 2019, Plaintiff John Doe # 1 contacted his elected official, Congresswoman Debbie Wasserman Schultz's office, and asked that they make a congressional inquiry with the Embassy in Kyrgyzstan. On December 10, 2019, Ms. Wasserman Schultz' office sent a letter to Plaintiff John Doe # 1 stating that the "Congressional Liaison at the U.S. Embassy in Bishkek informed [her] office that [his] relatives' cases are still undergoing administrative process," and that "[c]onsequently, a final decision [had] not yet been reached." *See* Ex. 7.

55. A copy of the letter from Alissa Bibb, the Consul in Bishkek, Kyrgyzstan, dated November 27, 2019, was enclosed with the Congresswoman's letter and further stated that the Plaintiffs' "immigrant visa applications are still undergoing administrative processing in order to verify their qualifications for visas." In the letter, the Consul further advised that they "are awaiting additional requested materials from the petitioner and beneficiary." *See* Ex. 8.

56. Contrary to the information in the Consul's November 27, 2019 letter, no one from the Consulate has requested additional information from any of the Plaintiffs since the initial request on June 18, 2019, which request was fulfilled within two days. In addition, Plaintiff John Doe # 1 included the offer to provide additional information in all of his emails to the Consulate, many of which were unanswered.

57. On December 14, 2019, Plaintiffs' attorney emailed the Consulate requesting more information in response to the Consul's November 27, 2019 letter. *See* Ex. 9. She included

supporting evidence of the Plaintiffs' marriage and further asked for an explanation regarding what type of information they were awaiting from the Plaintiffs. *Id.* On January 7, 2020, Plaintiffs' attorney emailed the Consulate again requesting a response to the foregoing email. *Id.* On January 28, 2020, Plaintiffs' attorney emailed the Consulate again requesting a response to the foregoing email. *Id.* To date, the Plaintiffs' attorney has not received a response to this latest stream of emails.

58. On December 26, 2019, Congresswoman Debbie Wasserman Schultz's office made another congressional inquiry with the Embassy in Kyrgyzstan in response to their November 27, 2019 letter. The Congresswoman's office requested an explanation regarding the type of information the Consulate is awaiting from the Plaintiffs. To date, the Congresswoman has not received a response to this inquiry.

59. On February 4, 2020, Plaintiff Jane Doe emailed the Consulate requesting an update on the status of their visas and advised that she could provide additional information if necessary. The Consulate responded the same day that "[a]s of today [she did] not need to provide any additional documentation" and that her "case is still undergoing an administrative processing and [that they] will contact [her] as soon as it is finalized." *See* Ex. 10.

60. Based on a recent visit to the Visa Status Check webpage of the CEAC Website, Plaintiff Jane Doe and Plaintiff John Doe # 2's cases are still in "Administrative Processing"; Plaintiff Jane Doe's case was last updated January 23, 2020 and Plaintiff John Doe # 2's case was last updated on August 28, 2019. According to the website, "[t]his processing can take several weeks." *Id. See also* Administrative Processing Information, U.S. Department of State, Bureau of Consular Affairs, *available at* https://travel.state.gov/content/travel/en/us-visas/visa-

information-resources/administrative-processing-information.html (last visited February 11, 2020).

61. The Plaintiffs are trapped in a state of administrative limbo. Despite having completed all the administrative steps to receive their visas and having been told that their visas were approved and would be ready for pickup nearly eight months ago, Plaintiffs still have not received their visas or received a resolution on their case. At no time have Defendants explained the reason Plaintiffs' visas are in administrative processing.

62. While awaiting resolution of their U.S. visas, the Plaintiff Family remains in Kyrgyzstan and husband and wife are not able to start their lives together in the United States. The delay in resolving the Plaintiff Family's visa cases has caused extreme hardship to the family, including delaying the unification of husband and wife. Plaintiff John Doe # 1 has visited his wife in Kyrgyzstan many times over the last several years, but they are both looking forward to having children and starting their lives together in the United States.

### III. Defendants' Inaction is Unreasonable and Unlawful

63. Plaintiffs contend that Defendants' approval, subsequent withdrawal of the approval and further failure to resolve the family's visa cases in a timely manner is unreasonable and unlawful, which should immediately be enjoined. Plaintiffs' visa applications had been completed, executed, and approved, and their visas were going to be issued when the Consulate withdrew their approval and halted the process. Defendants have provided no explanation for why Plaintiffs' visas were stalled.

64. Specifically, the Plaintiff Family's visa cases should be resolved prior to February 21, 2020, which is the date the Proclamation is said to go into effect.

65. There is no lawful justification for Defendants' inaction.

### IV.     Plaintiffs Have Been Harmed By Defendants' Inaction

66.     As a result of Defendants' failure to issue Plaintiffs' visas in a timely manner, Plaintiffs have suffered substantial, concrete, and particularized injury.

67.     As an initial matter, Plaintiffs have incurred significant expenses as a result of the delay. Plaintiff John Doe # 1 has spent thousands of dollars traveling to Kyrgyzstan to visit his wife while they waited for Defendants to resolve their visa cases. As noted above, Plaintiff Jane Doe provided her job with a two weeks' notice that she would be leaving because of Defendants' assurances that the visas would be issued. Although Plaintiff Jane Doe was ultimately allowed to withdraw her two weeks' notice, her career progression has come to a halt due to these actions.

68.     Additionally, Plaintiffs suffered substantial emotional trauma as a result of the delay. Husband and wife are not able to start their lives together and are not able to start a family together due to the delay. The family also faced extreme anxiety and insecurity about their future.

69.     Plaintiffs have suffered enormous stress and emotional trauma not only from their disappointment and uncertainty regarding their visas, but also from their concerns about being able to start a family together in the United States. Moreover, all Plaintiffs face indefinite separation from their immediate family members in the United States, creating irreparable harm by further delay. Such separation has had a significant emotional impact on Plaintiffs, heightened by the ambiguity surrounding when this separation will end.

### V.     Plaintiffs Are Entitled To Relief

70.     District courts have mandamus jurisdiction to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. §1361. Moreover, a district court reviewing agency action under the APA may "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). "Agency action"

includes, in relevant part, "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13).

71.   The APA requires administrative agencies to conclude matters presented to them "within a reasonable time." 5 U.S.C. § 555. The INA's implementing regulations further provide that "[w]hen a visa application has been properly completed and executed before a consular officer in accordance with the provisions of INA and the implementing regulations, the consular officer *must* either issue or refuse the visa under INA 212(a) or INA 221(g) or other applicable law." 22 C.F.R. 42.81 (emphasis added). Similarly, State Department policy makes clear that "[o]nce an application has been executed, the consular officer must either issue the visa or refuse it. A consular officer cannot temporarily refuse, suspend, or hold the visa for future action." 9 FAM 504.1-3(g). Under State Department policy, "[t]here is no such thing as an informal refusal or a pending case once a formal application has been made." 9 FAM 504.1-3(i).

72.   Here, Defendants adjudicated Plaintiffs' visa applications and advised that the visas would be issued on June 13, 2019. That decision, which was communicated to Plaintiffs, triggered Defendants' obligation to issue the visas. After the Consulate withdrew the initial approval, the Plaintiffs were placed in administrative limbo without even knowing it until months later.

73.   Defendants' failure to act violates the APA, 5 U.S.C. § 706(1), the INA and its implementing regulations, and agency policy. Because Defendants have failed to carry out their duties and obligations under the law and governing regulations, thereby depriving Plaintiffs of their clearly-established rights, Plaintiffs are entitled to a writ of mandamus and/or relief under the APA directing Defendants to issue their visas forthwith.

## FIRST CLAIM FOR RELIEF
## 28 U.S.C. § 1361
### WRIT OF MANDAMUS TO COMPEL OFFICERS AND AGENCIES OF THE UNITED STATES TO PERFORM A DUTY OWED TO PLAINTIFFS

74. The above paragraphs are incorporated herein by reference.

75. The INA, and the regulations issued pursuant to it, impose on Defendants a non-discretionary duty to issue visas once the decision to issue them has been made. The APA further requires agencies to "proceed to conclude a matter presented" to the agency "within a reasonable time." 5 U.S.C. § 555(b).

76. On June 7, 2019, Defendants approved Plaintiffs' visa applications and determined that Plaintiffs' visas would be issued a week later. The issuance of Plaintiffs' visas after the decision has been made to issue them is a nondiscretionary duty imposed upon Defendants by statute and/or regulation. The approval was thereafter withdrawn, and Plaintiffs were not provided with any reason for the withdrawal. Plaintiffs were thereafter placed (and still remain) in administrative processing without knowing it until several months later for an unreasonable period of time.

77. Defendants have failed and refused to issue Plaintiffs' visas. And thereafter, once the approval was withdrawn, failed to process the visa applications within a reasonable time. This failure and refusal have caused and continue to cause Plaintiffs harm, including separating Plaintiffs from their family members and exposing them to serious, prolonged, and imminent emotional harm to their well-being.

78. Plaintiffs have brought this action because Plaintiffs have no other means to compel Defendants to perform the duties Defendants owe to them. Plaintiffs have exhausted all available remedies.

79. Based on the foregoing, Plaintiffs are entitled to a writ of mandamus directing Defendants to issue the visas forthwith.

## SECOND CLAIM FOR RELIEF
## ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 706(1):
## AGENCY ACTION UNREASONABLY DELAYED OR UNLAWFULLY WITHHELD

80. The above paragraphs are incorporated herein by reference.

81. The INA, and the regulations issued pursuant to it, impose on Defendants a non-discretionary duty to issue visas once the decision to issue them has been made. The APA further requires agencies to "proceed to conclude a matter presented" to the agency "within a reasonable time." 5 U.S.C. § 555(b).

82. Here, Defendants have failed to issue Plaintiffs' visas within a reasonable time after deciding to issue them and this failure constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of 5 U.S.C. § 706(1). And thereafter, once the approval was withdrawn, failed to process the visa applications within a reasonable time and this failure also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of 5 U.S.C. § 706(1).

83. This failure has caused and continues to cause Plaintiffs harm including separating Plaintiffs from their immediate family members and exposing them to serious, prolonged, and imminent emotional harm to their well-being.

84. Plaintiffs have brought this action because Plaintiffs have no other means to compel Defendants to act. Plaintiffs have exhausted all available remedies.

85. Based on the foregoing, Plaintiffs are entitled to an order directing Defendants to issue Plaintiffs' visas forthwith in accordance with the APA.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully ask this Court to issue judgment in their favor and

against Defendants, and to grant the following relief:

A. Issue a writ of mandamus and a temporary, preliminary, and permanent injunction directing Defendants to effectuate the issuance of Plaintiffs' visas prior to February 21, 2020 (the date the Proclamation is said to go into effect);

B. Issue an order and a temporary, preliminary, and permanent injunction pursuant to the Administrative Procedure Act, 5 U.S.C. § 706(1), directing Defendants to effectuate the issuance of Plaintiffs' visas prior to February 21, 2020 (the date the Proclamation is said to go into effect);

C. Declare that Defendants' continued failure to issue Plaintiffs' approved visas constitutes agency action unlawfully withheld or unreasonably delayed;

D. Decide the action on an accelerated schedule in light of the ongoing harm Plaintiffs are suffering as a result of Defendants' refusal to act and the impending effective date of the Proclamation;

E. Retain jurisdiction over this action and any attendant proceedings until Defendants have in fact finally affixed Plaintiffs' visas to their passports, tendered those passports to Plaintiffs, and communicated that fact to the Court; and

F. Grant such further relief as this Court deems just and proper.

February 13, 2019                                    Respectfully submitted,

/s/ Rebecca J. Canamero
Rebecca J. Canamero (Florida Bar No. 86424)
Elena Aidova (Florida Bar No. 86717)
**HOLLAND AND KNIGHT LLP**
701 Brickell Avenue, Suite 3300
Miami, FL  33131
(305) 789-7766 (Telephone)
(305) 789-7799 (Fax)
***Attorney for Plaintiffs-Petitioners***